UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FONTENOY ENGINEERING INC,<br>Plaintiff,<br>v.<br>KATHY A. BARAN, et al.,<br>Defendants. | Case No. 18-cv-03361-DMR<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 42, 47 |

Plaintiff Fontenoy Engineering Inc. ("Fontenoy") brings this suit against Defendants United States Citizenship and Immigration Services ("USCIS") and Department of Homeland Security ("DHS"), seeking court review of Defendants' administrative decision to deny the H1-B application that Fontenoy filed on behalf of a prospective employee, Mark Goan. [Docket No. 1 ("Compl.").] Fontenoy now moves for summary judgment. [Docket Nos. 42 ("Pltf. Mot."), 48 ("Opp."), 49 ("Reply").] Defendants filed a cross-motion. [Docket Nos. 47 ("Def. Mot."), 50 ("Reply").] The court held a hearing on December 19, 2019.

Upon reviewing the parties' briefs, considering the administrative record, and hearing oral argument, the court denies Fontenoy's motion and grants Defendants' motion.

**I.  Background**

The following facts are taken from the administrative record. [Docket No. 41 ("A.R.").] Where indicated, the court cites the complaint for the purposes of providing background information. Fontenoy is a general engineering contractor specializing in underground utility construction. Compl. ¶ 8. Fontenoy intends to employ Goan, a native and citizen of Ireland, in the specialty occupation of Civil Engineer (Energy). *Id.* ¶ 1. Goan holds a Bachelor of Science degree from the Institute of Technology, Sligo and a Foundational degree from the Queen's University of Belfast. *Id.* ¶ 9. Goan previously was admitted to the United States on a J-1 visa. *Id.* ¶ 10. On

April 2, 2016, Fontenoy filed a H-1B petition on behalf of Goan, seeking to change Goan's immigration status from J-1 to H-1B. A. R. 168-231.

On October 5, 2016, USCIS issued a Notice of Intent to Deny the petition. A.R. 232-239 ("NOID"). USCIS explained that another petitioner, JMB Construction, Inc. ("JMB"), had also filed a H-1B petition for the same beneficiary. A.R. 233. USCIS noted the following similarities between the petitions:

- Both companies are seeking to employ the beneficiary for the same position of Civil Engineer (Energy) with an annual salary of $72,700 per year and perform the same exact duties;
- Both companies are in the same business of providing general engineering contracting;
- The letters of support submitted by both petitioners are nearly identical. The language of both appear similar and/or identical in material respects;
- The petitions have been filed using the same attorney;
- Aidan O'Sullivan, the listed president of Fontenoy Engineering, was the beneficiary of two I-129 and one I-140 petitions filed by JMB Construction, Inc.

A.R. 233. The NOID went on to explain that both petitions were filed under the numerical limits of the Immigration and Nationality Act ("INA"), section 214(g)(1)(A), and that federal regulations prohibit the filing of multiple such petitions for the same beneficiary in the same fiscal year except for certain enumerated circumstances. A.R. 233-35. The prohibition extends to an employer's "related entities (such as a parent company, subsidiary, or affiliate)," unless all of the related entities can demonstrate a "legitimate business need" to file multiple petitions for the same beneficiary. *Id.* USCIS noted that Fontenoy and JMB appeared to be related entities that had filed duplicate petitions for the same beneficiary without a legitimate business need. A.R. 234 (citing 8 C.F.R § 214.2(h)(2)(i)(G)). It also determined that Fontenoy had not demonstrated that Goan's foreign degree in Energy, Sustainability and the Environment was related to a civil engineering position. Finally, because of the alleged relationship between the entities, USCIS found that JMB did not make a creditable offer of employment to Goan and did not have the requisite employment relationship with him. A.R. 235-39.

Fontenoy responded to the NOID on November 2, 2016. A.R. 240-412. Fontenoy

represented that it is owned 100% by Aidan O'Sullivan, while JMB is majority owned by John and Margaret Burke, who together own 94.7% of the company. A.R. 240. Based on the differences in ownership, Fontenoy asserted that it is "clearly not a parent or subsidiary of JMB." A.R. 240. It also averred that it is not an affiliate of JMB, as that term is defined in the Foreign Affirms Manual ("FAM"):

> (a) One of two subsidiaries, both of which are owned and controlled by the same parent or individual; or
>
> (b) One of two legal entities owned and controlled by the same group of individuals, each individual owning and controlling approximately the same share or proportion of each entity . . . .

A.R. 240-41 (quoting FAM pt. 9, § 402.12-9(A)(b)(6)). According to Fontenoy, it is not an affiliate of JMB because the requisite level of ownership and control is missing. Fontenoy argued that there is "nothing to prohibit an individual with multiple job offers from two distinct and different companies as long as they are not a parent, subsidiary or affiliate of each other." A.R. 241.

In response to the similarities between the companies noted by NOID, Fontenoy explained that "the construction industry in the San Francisco Bay Area is currently experienc[ing] a high growth rate" and that "construction engineering graduates are currently receiving multiple job offers." A.R. 241. It stated that the identical salaries of $72,700 is based on the "prevailing wage of $72,654 for civil engineers" and represented that the job descriptions for the two positions are similar because "a civil engineer's job duties are the same irrespective of the company." A.R. 241. Fontenoy submitted additional documentation from both companies to show that they are separate entities, including tax documents and other corporate information. A.R. 241-242. It also provided a letter from Professor Rovane Younger of California State University (Chico), confirming that graduates from CSU's construction engineering department typically receive multiple job offers. A.R. 241-42.

On December 13, 2016, USCIS denied the petition. A.R. 155-164. It repeated the statutory and regulatory authority regarding multiple H-1B petitions and restated the NOID's conclusion that Fontenoy and JMB appear to be related entities. A.R. 157. USCIS indicated that it had reviewed the additional evidence Fontenoy submitted and noted additional indicia of relatedness: namely, that

3

JMB's 2015 tax returns list Aidan O'Sullivan as a 2.3% shareholder of JMB and Fontenoy's 2015 tax returns list Sean Burke as a paid officer for the company. A.R. 158. The decision stated: "From the evidence submitted, it appears that both entities have vested interest in each other and are partially owned by Aidan O'Sullivan." A.R. 158. USCIS concluded that Fontenoy "failed to submit corroborating evidence" that it and JMB are separate entities; that the companies have offered Goan two or more job offers for distinct positions; or that Fontenoy has a legitimate business need to file multiple H-1B petitions for the same beneficiary. A.R. 158.

USCIS also denied the petition on alternative and independent grounds. First, it reexamined whether there was a credible offer of employment. A.R. 159. It noted that the two applications indicated that Goan would be performing the exact same duties, and that Fontenoy failed to explain how he would be "fully capable of supporting each entity's needs" while working for "two different entities, full-time, with two different workloads; and at two different locations." A.R. 161. In addition, USCIS reaffirmed the NOID's determination that there was not an employer-employee relationship because the "evidence provided does not establish whether [Fontenoy] ha[s] the right to control the beneficiary's employment" if Goan would be simultaneously employed by both entities. A.R. 163. It also noted that Fontenoy had not provided any additional evidence that Goan's foreign credentials qualified him for the proffered position. USCIS concluded that "[t]he discrepancies in [Fontenoy's] submission have not been explained satisfactorily" and accordingly denied the petition. A.R. 161.

Fontenoy filed an appeal with the Administrative Appeals Office ("AAO") on February 10, 2017. A.R. 64-152. It argued that USCIS had applied an overbroad interpretation of "related entities" under section 214.2(h)(2)(i)(G). A.R. 77. It asserted that the finding in USCIS's decision was "based on an erroneous reading of the facts and evidence and an exaggeration of Aidan O'Sullivan's ownership interest" in JMB. A.R. 81. Fontenoy contended that USCIS had conflated John Burke (JMB's majority owner) and Sean Burke (Fontenoy's officer) who are in fact "two different individuals." It also contested USCIS's reasoning regarding the credible offer of employment and the employer-employee relationship, stating that it "never intended to employ [Goan] full-time at the same time as JMB [was] also employing him full-time," and that Goan simply

4

intended to work for the entity whose application was accepted (if either). A.R. 85. With respect to Goan's qualifications for the offered position, Fontenoy represented that Goan holds two degrees in Energy, Environment, and Sustainability, and that those degrees are directly related to the position of Civil Engineer (Energy). A.R. 86-87. It also submitted contracts for various projects to demonstrate that there was a legitimate business need for Goan to work on projects that are unrelated to JMB.

On August 1, 2017, the AAO dismissed the appeal. A.R. 56-63. It affirmed USCIS's determination that the companies are "related entities" and cited several rationales. First, it reiterated USCIS's observations that "both companies seek to employ [Goan] in the same position with the same job duties, requirements, and salary" and that "[b]oth companies are represented by the same attorney and submitted nearly identical documentation, including identical job descriptions, in support of the petitions." A.R. 59. Second, the AAO acknowledged that O'Sullivan's 2.3% ownership interest in JMB appears "minimal in terms of corporate control," but stated that it must also "consider whether an informal relationship exists" between the companies. A.R. 59 (internal quotation marks omitted). It considered significant that JMB filed two nonimmigrant visa petitions and one immigrant visa petition on behalf of O'Sullivan and inferred that O'Sullivan used to be (or still is) a JMB employee. A.R. 59. According to the AAO, Fontenoy's assertion that O'Sullivan is not an employee of JMB and has no other involvement with that company was not corroborated by objective, independent evidence. A.R. 59. Third, the AAO noted that JMB has two other shareholders and that Fontenoy did not disclose the identities of these individuals or state whether they are involved in Fontenoy's operations. A.R. 59. Fourth, with respect to the identities of "Sean Burke" and "John Burke," the AAO stated that the common last name may imply a familial tie or other close relationship between the individuals and therefore it was not enough for Fontenoy to merely assert that these are "two different individuals." A.R. 59. Fifth, the AAO observed that Fontenoy had not directly addressed "whether there exists a working relationship" between these various individuals and it was unclear whether the companies shared any critical employees or personnel. Based on these factors, the AAO found that Fontenoy and JMB are related entities. A.R. 58-60. It also considered whether Fontenoy had demonstrated a

5

"legitimate business need" to file duplicative petitions for Goan and concluded it had not because the petitions were "materially identical" and that Fontenoy admitted that it filed them to increase Goan's chances of being selected under the H1-B lottery. A.R. 61.

The AAO also determined that Fontenoy failed to show that there was a credible job opportunity. A.R. 62. For example, Fontenoy and JMB classified the offered position as a civil engineering position. A.R. 61. However, the U.S. Department of Labor's Occupational Outlook Handbook ("OOH") states that "[c]ivil engineers need a bachelor's degree in civil engineering, in one of its specialties, or in civil engineering technology." A.R. 62 (citation omitted). The AAO stated that Fontenoy had not established that Goan's degree in "Energy, Environment and Sustainability" is equivalent to a degree in civil engineering or a closely related specialty. A.R. 62. It also noted that the letter Fontenoy submitted from Professor Younger addressed construction management and that it appeared that Goan's prospective job duties overlapped with those of a construction manager. A.R. 62. Based on these reasons, the AAO found that the record did not sufficiently demonstrate the "substantive nature" of the proffered position. A.R. 62. The AAO did not reach USCIS's other grounds for denial, including whether the proffered position qualifies as a specialty occupation and whether Goan is qualified to perform that job.[1] A.R. 63.

On September 1, 2017, Fontenoy filed a motion to reopen or reconsider before the AAO. Compl. ¶ 16; *Id.*, Ex. G. It argued that the AAO's interpretation of "related entities" was overbroad and unsupported by authority. It disputed the AAO's finding that it had not provided adequate evidence regarding O'Sullivan's relationship with JMB because Fontenoy's tax records indicate that he devotes 100% of his time to that business. Fontenoy also stated that it contacted JMB after the AAO's decision to confirm that JMB's two other shareholders have "no relationship whatsoever" with Fontenoy. *Id.* at 8. Fontenoy noted that it could have provided this information to USCIS sooner but it was not brought up until the AAO decision. The motion also reasserted that "John Burke" and "Sean Burke" are two different individuals and that Sean Burke's family ties are

---

[1] However, the AAO disproved USCIS's assertion that the duplicate petitions requested concurrent employment at both entities and withdrew any conclusions by the USCIS that were based solely on that reasoning. A.R. 63.

6

irrelevant. Fontenoy stated that it had made it "abundantly clear that it does not share the same signatories, worksite locations, contacts and work orders making it illogical, inefficient and even impossible to share critical employees and personnel." *Id.* at 10. Fontenoy also argued that it had established a legitimate business need to employ Goan even if it is related to JMB. Specifically, it asserted that the contracts it submitted on appeal show the availability of projects for the proffered position with entities that are not JMB. It contended that the nature of the two businesses is very different because Fontenoy qualifies for certain incentive programs that JMB does not.

The AAO denied the motions. With respect to the motion to reopen, the AAO acknowledged that O'Sullivan may not currently be an employee of JMB but that Fontenoy had not addressed other significant aspects of O'Sullivan's relationship to JMB, including his apparent past employment with that entity. It accepted Fontenoy's new evidence that JMB's other shareholders are not related to Fontenoy. However, it determined that the new evidence does not address "all aspects of the relationship" between the two entities and pointed out that Fontenoy had apparently, by its conspicuous silence, conceded that there is a familial relationship between John Burke and Sean Burke. On the motion to reconsider, the AAO rejected Fontenoy's argument that its interpretation of "related entities" is "so broad that it could reach most if not all entities working in the same geographical area or industry." *Id.* at 3 (quotation marks omitted). It explained:

> The Petitioner's concerns are misplaced. We are not concerned with petitioning employers who have any quantum of a relationship. Two unwitting companies would not likely have the requisite similitude to trigger the bar. But the more similarities in the records, the more likely the companies were acting in concert to undermine the purpose of the random lottery process. Whether two petitioners are "related entities" is an issue of fact that we determine based on the totality of the record. Some factors relevant to relatedness may include familial ties, proximity of locations, leadership structure, employment history, similar work assignments, and substantially similar supporting documentation.

*Id.* The AAO noted that Fontenoy did not contest the prior decision's statement that Fontenoy and JMB cooperated with each other's filings. It concluded that the motion to reconsider also did not address other concerns raised previously, including inconsistencies with Fontenoy's claim that the proffered position is a civil engineering job and Goan's intentional actions in seeking out as many

7

job offers as possible. The AAO accordingly denied both motions, and this action followed.

The complaint alleges three claims for relief. On December 10, 2019, the court granted Defendants' partial motion to dismiss two of the claims. [Docket No. 29.] Petitioner's sole remaining claim under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, is the subject of this motion.

**II. Standard of Review**

In cases involving review of a final agency determination under the APA, a district court's role is not fact-finding. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). The reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Review under the arbitrary and capricious standard is deferential." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007). A court should not vacate an agency's decision unless it has "relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Judicial review of agency decisions is "especially deferential in the context of immigration policy." *Jang v. Reno*, 113 F.3d 1074, 1077 (9th Cir. 1997). "To determine whether an agency violated the arbitrary and capricious standard, [the] court must determine whether the agency articulated a rational connection between the facts found and the choice made." *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1236 (9th Cir. 2001). In order for the court to confirm the agency's decision as rationally connected to the facts, the agency must have considered "substantial evidence" that supported its decision. *See Nakamoto v. Ashcroft*, 363 F.3d 874, 881–82 (9th Cir. 2004). "To reverse under the substantial evidence standard, the evidence must

be so compelling that no reasonable factfinder could fail to find the facts were as the [plaintiff] alleged." *Singh v. Reno*, 113 F.3d 1512, 1514 (9th Cir. 1997).

**III. Discussion**

    **A. Statutory Framework**

Employers in the United States may petition for a nonimmigrant temporary work visa under the H-1B program. *See* 8 U.S.C. § 1184(c). To petition for a H1-B visa, the employer must submit a Form I-129 (Petition for Nonimmigrant Worker) and file a Labor Condition Application ("LCA"). *See* 8 C.F.R. § 213.2 (h)(4)(i)(B)(1). An H-1B visa grants the employee temporary admission into the United States to "perform services . . . in a specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b). For the purposes of a H-1B visa, a "specialty occupation" means an "occupation that requires—(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. 1184(i)(1). Currently, the number of H1-B visas that may be granted in any given fiscal year is capped at 65,000.[2] 8 U.S.C. § 1184(g).

Federal regulations prohibit an employer or a related entity from filing multiple cap-subject H-1B petitions on behalf of the same beneficiary in the same fiscal year:

> An employer may not file, in the same fiscal year, more than one H–1B petition on behalf of the same alien if the alien is subject to the numerical limitations of section 214(g)(1)(A) of the Act . . . . [F]iling more than one H–1B petition by an employer on behalf of the same alien in the same fiscal year will result in the denial or revocation of all such petitions. If USCIS believes that related entities (such as a parent company, subsidiary, or affiliate) may not have a legitimate business need to file more than one H–1B petition on behalf of the same alien subject to the numerical limitations of section 214(g)(1)(A) of the Act or otherwise eligible for an exemption under section 214(g)(5)(C) of the Act, USCIS may issue a request for additional evidence or notice of intent to deny, or notice of intent to revoke each petition. If any of the related entities fail to demonstrate a legitimate business need to file an H–1B petition on behalf of the same alien, all petitions filed on that alien's behalf by the related entities will be denied or revoked.

---

[2] Some H1-B visa petitions are exempt from the cap, although none of those exceptions are at issue in this motion.

9

8 C.F.R. § 214.2(h)(2)(i)(G). The Federal Register explains the circumstances under which related entities may file multiple petitions for the same beneficiary:

> This rule does not, however, preclude related employers from filing petitions on behalf of the same [noncitizen]. USCIS recognizes that an employer and one or more related entities (such as a parent, subsidiary or affiliate) may extend the same [noncitizen] two or more job offers for distinct positions and therefore have a legitimate business need to file two or more separate H-1B petitions on behalf of the same [noncitizen].

73 Fed. Reg. 15392. That section also explains the consequences of attempting to bypass the multiple-petition prohibition:

> USCIS may issue a request for additional evidence or notice of intent to deny, or notice of intent to revoke for any or each petition if it determines that the employer and related entity(ies) filed a duplicate petition as defined in this regulation. See 8 CFR parts 103 and 214.2(h)(11). The burden rests with the employer to establish that it has a legitimate business need to file more than one H-1B petition on behalf of the same alien. If the employer does not meet its burden, USCIS may deny or revoke each petition, as appropriate. Without such authority, a loophole would exist for related employers to file multiple petitions on behalf of the same alien under the guise that the petitions are based on different job offers, when the true purpose of filing the petitions is to secure employment for the alien with a single employer seeking his or her services. As an example, one target of this provision is the unscrupulous employer that establishes or uses shell subsidiaries or affiliates to file additional petitions on behalf of the same alien in order to increase the alien's chances of being allotted an H-1B number. USCIS believes that these consequences are warranted in order to deter unfair filing practices and further ensure the integrity of the H-1B cap counting process.

73 Fed. Reg. 15393. The primary issue presented in this motion is whether Fontenoy and JMB are related entities within the meaning of the statute and if so, whether Fontenoy has a legitimate business need for filing a duplicate petition. Fontenoy also raises other challenges to the AAO's decision, including that USCIS and the AAO did not apply the correct burden of proof and that the AAO applied an inappropriate standard in dismissing its motion to reopen. These arguments are addressed in turn.

### B. Related Entities

On March 23, 2018, USCIS published a policy memorandum adopting the AAO's decision in *Matter of S- Inc.* and directed USCIS to follow the reasoning in that decision in similar cases

10

moving forward. *See Matter of S- Inc.*, Adopted Decision 2018-02, 2018 WL 1583229 (Mar. 23, 2018). The policy memorandum was adopted after the AAO issued its decision in this case.[3] In *Matter of S-, Inc.*, an employer filed a H-1B petition on behalf of a prospective employee who was also the beneficiary of another petition filed by a second company. *Id.* at *1. USCIS acknowledged that the two entities had separate federal employer identification numbers (FEINs), operation locations, management, and ownership and were therefore not related to each other as a parent company, subsidiary, or affiliate. *Id.* at *3. Nevertheless, it found they were "related entities" "based on the similarities between the two petitions, [and because] both filed for the Beneficiary to work in substantially the same job at the same end-client." *Id.* at *3. USCIS denied the petition on that basis. *Id.* On appeal, the employer argued that "related entities" refers only to "entities that are related through corporate ownership and control." *Id.* The AAO rejected that argument. It noted that the text of the regulations "does not circumscribe a closed set of relevant relationships" but instead provides a non-exhaustive list of examples. *Id.* (citing 8 C.F.R. § 214.2(h)(2)(i)(G)). The AAO determined that adopting the employer's definition would allow corporations to employ crafted strategies to game the lottery system, and instead defined "related entities" to include "petitioners, whether or not related through corporate ownership and control, who submit multiple petitions for the same beneficiary for substantially the same job." *Id.* It also explained the factors relevant to deciding whether two jobs are substantially the same:

> Whether two jobs are "substantially the same" is an issue of fact that we determine based on the totality of the record. Some factors relevant to relatedness may include familial ties, proximity of locations, leadership structure, employment history, similar work assignments, and substantially similar supporting documentation. The Petitioner cautioned that reading the rule to include petitioners, whether or not related through corporate ownership and control, could ensnare companies that can be found 'related' for any number of 'unspecified reasons.' The Petitioner's concerns are misplaced. We are not concerned with petitioning employers who have any quantum of a relationship. Two unwitting companies would not likely have the requisite similitude to trigger the bar. But the more similarities in the records, the more likely the companies were seeking to undermine the

---

[3] The court acknowledges that *Matter of S- Inc.* is not retroactive authority for the AAO's decision in this case and is not binding on this court. However, the court considers the reasoning presented in that decision as illustrative of whether the AAO's decision in this case was arbitrary and capricious.

11

purpose of the random lottery process.

*Id.* Applying that standard to the facts before it, the AAO noted that USCIS had found multiple similarities between the petitions including the beneficiary's assignment to "the same end-client through the same mid-vendors." *Id.* at *4. It also observed that the second company had executed a subcontractor agreement with the employer less than a month before the H-1B petition at issue had been filed. *Id.* Based on these connections between the companies, the AAO determined that the two companies were related entities.

*Matter of S- Inc.* is persuasive because it cautions against a bright line rule based on purely legal classifications in favor of a fact-intensive inquiry into the actual nature of a corporate relationship. As that decision noted, employers could "easily circumvent" a rigid legalistic construction "through corporate law stratagems." 2018 WL 1583229, at *3. Notably, the framework proposed by *Matter of S- Inc.* cuts both ways because it prohibits USCIS from summarily denying petitions based solely on legal classifications. In sum, the individualized inquiry set forth in that case comports with the language of the federal regulations and the intent behind multiple-petition bar.

While the AAO did not apply *Matter of S- Inc.* in the current case (as that decision had not yet been published), it engaged in a similar fact-intensive inquiry to determine the nature of the relationship between Fontenoy and JMB.[4] It pointed out that 8 C.F.R. § 214.2(h)(2)(i)(G) lists several kinds of related entities ("such as a parent company, subsidiary, or affiliate") and determined that that language only describes some examples of related entities and is not an exhaustive list. Examining the intent behind the H-1B lottery system, the AAO stated that it must "expansively interpret" the meaning of "related entities" in order to effectuate the remedial purpose of that process. ("If we were to limit 8 C.F.R. § 214.2(h)(2)(i)(G) to only *legally* related entities, then the regulation's primary purpose to curb abuse of the random lottery system could continue to be easily frustrated."). The AAO found that Fontenoy and JMB are related entities on numerous grounds, including the "nearly identical documents" submitted by the same attorney in support of both

---

[4] In so finding, the AAO applied the "ordinary meaning" of the word "related," which it identified has having "some sort of connection." With respect to Fontenoy's argument that this language is overbroad, the court notes that the AAO did not employ that language in the broad manner suggested by Fontenoy. Instead, the AAO pointed at specific indicia of relatedness that supported its decision.

12

petitions and apparent connections between the companies through various employees and officers. Given the similarities between the petitions as well as the other apparent connections between the entities, the AAO determined that Fontenoy and JMB "likely knew of and cooperated with the other's filing for [Goan]." It accordingly held that the multiple petitions fell under the circumstances that 8 C.F.R. § 214.2(h)(2)(i)(G) was intended to prohibit.

At the hearing, Fontenoy acknowledged that "related entities" does not only refer to parents, subsidiaries, or affiliates, and that a totality of the circumstances test applies. However, it argues in its motion that *Matter of S- Inc.* supports its position because the AAO in that case found the entities related "on the sole grounds that they offered the same job for the same end client through[] the same vendors." Mot. at 14. Fontenoy reiterates that Fontenoy and JMB neither contract services from each other nor share the same end clients, and that the petitions show both entities intend to "directly employ the beneficiary at its separate locations, to work on its construction projects and end clients." *Id.*

Fontenoy's arguments are not persuasive. While *Matter of S- Inc.* considered the shared end-clients as an important factor to the outcome of that case, it listed many other factors that are relevant to the relatedness inquiry, including "familial ties, proximity of locations, leadership structure, employment history, similar work assignments, and substantially similar supporting documentation." 2018 WL 1583229, at *3. Notably, most if not all of the listed factors exist in this case. Additionally, the court agrees with Defendants that Fontenoy has repeatedly failed to address significant concerns raised by USCIS and the AAO. In none of its briefing, either in the administrative process or the current motion, does Fontenoy address why the petitions were nearly identical and filed by the same attorney; why O'Sullivan was the beneficiary of three visa petitions filed by JMB; and whether there is a familial relationship between Sean Burke and the majority shareholders of JMB. While those factors may not be dispositive in determining whether the entities are related, it is notable that Fontenoy does not directly address them or explain why they are not important considerations. At the hearing, Fontenoy argued that each factor cited by the AAO was also consistent with Fontenoy and JMB not being related entities. However, it is not within the purview of this court to reweigh the evidence considered by the AAO; the AAO's decision will be

13

upheld so long as it is based on substantial evidence.

In addition, there are other indicators that Fontenoy has been less than transparent. For example, Fontenoy summarily asserts that the two companies are "competitors" but offers no explanation as to why competitors would coordinate in drafting and filing petitions for the same employee.[5] Considering the record as a whole, the court finds that there is substantial evidence supporting the AAO's determination that Fontenoy and JMB are related entities.

### C. Legitimate Business Need

Even if Fontenoy and JMB are related entities, they may each file a H-1B petition for the same beneficiary in the same fiscal year if they have a legitimate business need to do so. 8 U.S.C. § 214.2(h)(2)(i)(G). Fontenoy argues that both entities have a legitimate business need to hire a Civil Engineer (Energy), while Defendants assert that it has shown no such need. The only authority either side cites that interprets the phrase "legitimate business need" is the example in the Federal Register cited above:

> [I]f the bottled beverage plant owned by the Fortune 500 company and the cereal manufacturing company owned by the same Fortune 500 company are each in need of the services of a Chief Financial Officer, both may file one petition each on behalf of the same alien. A subsidiary should not file an H-1B petition for an alien just to increase the alien's chances of being selected for an H-1B number where that subsidiary has no legitimate need to employ the alien and is, instead, only filing a petition to facilitate the alien's hiring by a different, although related, subsidiary.

73 Fed. Reg. 15393.

In this case, USCIS did not address "legitimate business need" except to summarily conclude that Fontenoy has not established that factor because of the similarities between the petitions. The AAO considered the issue more explicitly:

> Generally, in determining whether a petitioner has demonstrated a "legitimate business need," we consider factors relevant to the nature of the beneficiary's proposed employment such as the same or similar job duties and the submission of identical supporting documentation. We also consider factors relevant to the nature of the petitioner's business

---

[5] Fontenoy argued at the hearing that it is common practice for immigration attorneys to represent competitors in the same industries. However, it did not explain why it did not give argument or evidence on this point during any stage of the administrative process.

14

> operations, including the ability of the petitioner to support the proposed employment within its particular business operations, the petitioner's hiring and recruiting history for the proffered position, and the petitioner's intent in filing the petition for the beneficiary. Each set of petitions must be evaluated on a case-by-case basis, with no one factor necessarily determinative or exclusive. Whether or not 8 C.F.R. § 214.2(h)(2)(i)(G) applies ultimately boils down to the nature and purpose of the employment being offered: each proffered position must be materially distinct and must represent a credible, bona fide job opportunity.

*Id.* at 6 (footnote omitted). The AAO found that Fontenoy failed to establish a legitimate business need for three reasons: (1) the petitions filed by both entities were materially identical; (2) Fontenoy admitted that Goan sought employment with both entities to increase his chances of being selected for the H-1B lottery; and (3) Fontenoy had not demonstrated a credible, bona fide job opportunity for Goan.

With respect to the first rationale, the AAO did not explain why the similarities in the petitions indicate the lack of a legitimate business need. As Fontenoy points out, both entities could have a legitimate business need to employ Goan for the same type of work. In the Federal Register example, two subsidiaries of the same parent company submitted legitimate petitions for a Chief Financial Officer. While the AAO recognized that related entities may each try to fill a position with the same job title and similar duties, it did not explain why Fontenoy and JMB cannot do so here. At the hearing, Defendants conceded that the similarities in the applications alone is not material to the legitimate business need analysis. Accordingly, the AAO's first reason is not supported by substantial evidence.

The AAO's second rationale was that Fontenoy admitted that it filed its petition "with the intent to increase [Goan's] chances of being selected under the H-1B lottery." That portion of the AAO's decision appears to misconstrue Fontenoy's position. In the appeal, Fontenoy actually said that Goan himself "intentionally sought out as many job offers as possible, and planned on making his actual decision on what job offer to accept only after knowing if a particular petition had been accepted for processing." Compl., Ex. E, at 10. The prohibition on multiple petitions is to prevent employers from "exploit[ing] the random selection process to the competitive disadvantage of other petitioners." 73 Fed. Reg. 15392. For example, "one target of this provision is the unscrupulous employer that establishes or uses shell subsidiaries or affiliates to file additional petitions on behalf

of the same alien in order to increase the alien's chances of being allotted an H-1B number." *Id.* at 15393. The clear intent behind the prohibition is to prevent an employer from gaming the lottery system to increase its own chances of hiring a beneficiary. Defendants cite no authority preventing beneficiaries from increasing their own chances of being selected, such as by seeking out as many sponsoring employers as possible. Therefore, the AAO's second reason is not supported by substantial evidence.

Finally, the AAO found that Fontenoy had not established that there was a credible job opportunity for Goan. It noted that the OOH states that "[c]ivil engineers need a bachelor's degree in civil engineering, in one of its specialties, or in civil engineering technology." Compl., Ex. F, at 7. The AAO found that neither petition stated that the proffered job required a degree in civil engineering or another related engineering degree. Both instead stated that the proffered position of Civil Engineer (Energy) requires "at least a bachelor's degree in Energy, Environment and Sustainability or a related field." *Id.* As the AAO noted, the "required" degree is conveniently identical to the foreign degree held by Goan. The apparent tailoring of the petitions to fit Goan's exact qualifications implicates the lack of a credible job opportunity for a civil engineer. In addition, the AAO pointed out that Professor Younger's letter addressed construction management rather than civil engineering. It noted that the job duties listed for Goan also appeared to overlap extensively with the job duties of a construction manager.[6] Based on these factors, the AAO stated that "it is

---

[6] The application described the proposed job duties as follows:

> Mr. Goan will be involved in conducting site safety management, the preparation of scheduling for project start dates and updates, traffic plans, permit acquisitions, submittal preparations, material purchasing and control, quality control monitoring, overseeing project control systems and documentation. He will compile change orders and estimates, and carry out other work in support of on-site engineering activities. He will be responsible for analyzing drawings, blueprints, survey reports and maps using engineering and design software. He will calculate costs of materials required for projects applying his knowledge and techniques of engineering and advanced mathematics. He will inspect construction sites to monitor progress and ensure conformance to design specifications and safety standards in accordance with OSHA rules and regulations. He will prepare daily reports, time sheets, safety logs, cost coding, and project schedules. He will prepare monthly requisition and progress payments; oversee subcontract provisions related to compliance with plans and specification; and ensure quality control procedures and standards. He will oversee and facilitate the exploration and use of alternative energies and energy efficiency in the planning and development stages of projects.

16

not apparent that the proffered position is actually a civil engineering position." *Id.* The AAO held that it could not determine the substantive nature of the position being offered and therefore could not find that there was a credible, bona fide job opportunity.

Notably, Fontenoy did not address these concerns in its motion to reopen or reconsider, and did not address them in its briefing in this case other than to point to the contracts it submitted to show that there are available construction projects that require the job duties listed on the petitions. While the contracts may indicate some legitimate business need to hire civil engineers generally, they are not probative of whether the position offered to *Goan* is a civil engineering job.[7] At the hearing, Fontenoy asserted that it and JMB both construct underground pipelines to transport energy, among other things. It represented that the job duties it listed on the H-1B application may overlap to some extent with those of a construction manager but claimed that the position is traditionally filled by civil engineers. For this proposition, Fontenoy cited to Younger's letter; however, Younger's letter discusses construction management rather than civil engineering. The letter does not mention engineering at all, much less explain why jobs like the proffered position are engineering rather than construction management jobs. *See* A.R. 397. Younger's signature block also indicates that he is a Professor of Construction Management. *Id.* In addition, Fontenoy cited to the OOH's statement that "[c]ivil engineers need a bachelor's degree in civil engineering [or] in one of its specialties," and asserted that energy engineering has been acknowledged as an engineering specialty. However, the AAO did not reach its conclusion on the basis that Civil Engineer (Energy) is not a specialty of engineering, but rather because the listed job duties did not appear to describe an engineering position.[8] The AAO acknowledged that Goan's degree is in "Energy, Environment and Sustainability," but stated that Fontenoy had not established that his

---

A.R. 219.

[7] Fontenoy acknowledged at oral argument that the contracts do not reference Mr. Goan specifically. Nor did it explain how the general need for civil engineers in energy established that the specific position offered would meet that need.

[8] Fontenoy asserted that it had to list Goan's position under the general "Civil Engineer" code when filing the LCA because there is no code specific to Civil Engineer (Energy). But the code Fontenoy used on the LCA is immaterial to whether the position available to to Goan is actually an engineering job.

17

degree is "equivalent to an *engineering* degree, much less an engineering degree in the specific field of *civil engineering* or one of its closely related specialties." Compl., Ex. F at 7. In sum, Fontenoy's arguments do not address the core concern raised by the AAO; namely, whether the specific position offered to Goan qualified as a civil engineering job.

Fontenoy complains at several points that "there would be no evidence that [it] could have provided to meet the burden applied in this case," but that statement is not credible. *See* Mot. at 16. In its initial decision, the AAO listed several factors relevant to the "legitimate need" determination, including "the ability of the petitioner to support the proposed employment within its particular business operations, the petitioner's hiring and recruiting history for the proffered position, and the petitioner's intent in filing the petition for the beneficiary." Fontenoy could have, but did not, submit evidence of how it has hired for the position of Civil Engineering (Energy) in the past; what qualifications it has previously accepted for that position; or evidence of industry custom relating to the job duties of civil engineers in energy.

For all of the reasons stated above, the court finds that the AAO's decision that Fontenoy failed to demonstrate a legitimate business need to submit a duplicate petition on behalf of Goan is supported by substantial evidence.

### D. Burden of Proof

The applicable burden a petitioner must meet to establish eligibility for a H-1B visa is a preponderance of the evidence. *Matter of Chawathe*, 25 I. & N. Dec. 369, 375 (2010) ("Except where a different standard is specified by law, a petitioner or applicant in administrative immigration proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought.").

Fontenoy argues that USCIS and the AAO improperly imposed a heightened burden of proof in this case. It asserts that at each stage of the administrative proceedings, it presented the requested additional evidence "only to find new allegations" raised in the next decision. It argues that the AAO did not even consider the contracts it submitted, which "demonstrate the nature and type of the Plaintiff's work, and make it clear that such work does require the services of the proffered position." Mot. at 16. Fontenoy asserts that "it appears that there would be no evidence that Plaintiff

could have provided to meet the burden applied in this case." *Id.*

Fontenoy's argument lacks merit. The record establishes that Fontenoy repeatedly failed to address concerns raised by USCIS and the AAO, such as why two the petitions are nearly identical and filed by the same attorney; why O'Sullivan was the beneficiary of three visa petitions filed by JMB; and whether there is a familial relationship between Sean Burke and the majority shareholders of JMB. In its initial decision, the AAO explained in depth why it found there was not a credible job offer and listed the kinds of evidence relevant to that determination. Fontenoy's motion to reopen or reconsider summarily asserted that the contracts it submitted prove the existence of the proffered position, but it did not explain how the contracts prove the job duties and qualifications required for a civil engineer. In sum, the record does not support Fontenoy's characterization of the burden of proof applied in this case.

### E. Motion to Reopen

"A motion to reopen must state the new facts to be provided in the reopened proceeding and be supported by affidavits or other documentary evidence." 8 C.F.R. § 103.5(a)(2). A petitioner must "support [its] motion to reopen with new facts that [are] material to the merits of [the] underlying application." *Delgado v. Quarantillo*, 611 F. App'x 30, 31 (2d Cir. 2015).

Fontenoy filed a motion to reopen with "new fact[s] about its contracts for ongoing construction projects and copies of actual contracts as supporting evidence." Reply at 3. Fontenoy argues that the AAO inappropriately failed to consider the new arguments and evidence because they establish that Fontenoy and JMB do not contract for or with one another and that Fontenoy had a legitimate business need to employ Goan to complete the work pursuant to the contracts. *Id.* at 5. Fontenoy's position is unconvincing. It is clear that the AAO did consider the new evidence on the merits because it acknowledged that "[t]he newly submitted evidence resolves the ownership of [JMB]." *Id.* However, the AAO also noted that the new evidence does not establish that Fontenoy and JMB are not related because it does not explain other factors the AAO considered relevant in making its decision, such as O'Sullivan's employment history with JMB and the apparent familial relationship between Sean Burke and John Burke. Fontenoy does not explain how the new evidence it submitted is relevant to those concerns. The AAO's initial decision made clear that it was not

relying on some formal legal relationship (such as a contracting relationship) between the parties, so more evidence disputing that point is not relevant. Therefore, the AAO did not err in not specifically addressing the contracts Fontenoy submitted.

## IV. Conclusion

For the reasons stated above, the court denies Fontenoy's motion and grants Defendants' motion. The Clerk shall enter judgment for Defendants and against Fontenoy and close the file in this matter.

**IT IS SO ORDERED.**

Dated: January 13, 2020



Judge Donna M. Ryu
United States Magistrate Judge